## MATTER OF LEW

### In Section 245 Proceedings

#### A-8939220

*Decided by District Director April 7, 1965*

Adjustment of status under section 245, Immigration and Nationality Act, as amended, is denied an alien who, pursuant to section 203(a)(1)(B) of the Act, derived first preference classification through her husband but who is no longer entitled thereto since a *bona fide* husband-wife relationship has not existed since at least July 8, 1964, when an interlocutory decree of divorce was granted her husband.

**Discussion:** On February 2, 1965 subject's application for status as permanent resident was denied on the ground that an immigrant visa was not immediately available to her, she being no longer entitled to derivative first preference classification through her husband by reason of an interlocutory decree of divorce granted to him upon her default. On March 22, 1965 the applicant filed the instant motion for reconsideration urging that the interlocutory decree of divorce did not terminate the marriage; that that would only occur at the time a final decree was entered; that until then she remained the wife entitled to derivative first preference classification through her husband; and, therefore, that her application for permanent residence status should be granted as the first preference portion of the Korean quota was immediately available. In the alternative, she requested that action in the case be deferred until the decree of divorce becomes final.

The applicant, native and citizen of Korea by birth there on March 20, 1938, was admitted to the United States as a temporary student on September 30, 1953 and remained in lawful status until April 18, 1962 on which date her third period of practical training expired. Her application for permanent resident status was filed on January 30, 1963.

The applicant's husband, Mr. Young Lew, the subject of Service file A8 956 238, a native and citizen of Korea by reason of birth

there on January 9, 1932, was admitted to the United States on March 10, 1955 as a student and remained in that status until April 12, 1962 when his third period of practical training expired. He married the applicant in the United States on August 20, 1960 of which marriage one child was born in the United States on December 14, 1961. A petition seeking first preference classification for the husband was filed June 22, 1962, approved September 12, 1962, and was the basis for the grant of permanent resident status to the husband on April 8, 1963 pursuant to an application filed by him. Under section 203(a)(1)(B) of the Immigration and Nationality Act, the applicant became entitled to first preference classification under her appropriate quota as the spouse of an immigrant who was found eligible for such classification.

The instant record includes a certified copy of an interlocutory judgment of divorce by default dated July 8, 1964 adjudging that the husband is entitled to a divorce from the applicant; that when one year shall have expired after the entry of the interlocutory judgment a final judgment dissolving the marriage be entered.

A study of the provisions of the Immigration and Nationality Act and the legislative history leading to its enactment clearly evidences a congressional desire to retain and unite family relationships. To accomplish this objective, nonquota or preference quota classification is accorded the spouse, child, parent, son, daughter, brother or sister of designated United States citizens or immigrants (sections 101(a)(27) and 203 of the Immigration and Nationality Act). The Congress insisted, however, that the claimed relationship exist right up to the time that permanent status was acquired (section 205(d) of the Immigration and Nationality Act).

Since the objective of the Congress was the preservation of the family unit, the Congress could only have intended to confer the quota benefit where the bona fide relationship existed in fact as well as in law. That a lawful marriage alone was not within the congressional contemplation is evidenced by section 101(a)(35) of the Immigration and Nationality Act which provides that the terms "spouse", "wife", or "husband", do not include a spouse, wife, or husband by reasons of any marriage ceremony where the contracting parties thereto were not physically present in the presence of each other, unless the marriage shall have been thereafter consummated (*Matter of B—*, 5 I. & N. Dec. 698). The alien spouse of such a proxy unconsummated marriage derives no quota benefit under the immigration law even in a situation where the proxy marriage is regarded as a lawful marriage in the place where it was performed and, therefore, lawful elsewhere.

149

In *Matter of M—*, 8 I. & N. Dec. 217; 218, the Board of Immigration Appeals, after reviewing judicial decisions, stated the rule to be as follows:

We believe the rule to be drawn from the cases is that an alien is not legally entitled to receive a nonquota visa as the spouse of a citizen unless a valid marriage existed when the visa was issued and that even if the marriage is considered valid in the place where it is performed, it cannot serve as the basis for the proper issue of a nonquota visa to a "spouse" of the marriage unless there is a bona fide husband and wife relationship in existence.

In the instant case the evidence establishes and the applicant concedes that her marriage was the subject of an interlocutory decree of divorce and that she is not residing in a husband and wife relationship with the person through whom she claims to be entitled to derivative first preference classification. Although the interlocutory decree was entered July 8, 1964, the parties thereto have not effected or evidenced an intention to effect a reconciliation. To the contrary, on October 28, 1964 Mr. Lew furnished the certified copy of the interlocutory decree.

It must be concluded, therefore, that at the present time and continuously since at least July 8, 1964, there has been no bona fide husband and wife relationship in existence between the applicant and Mr. Lew. While under the law of the State of California the marriage between the parties is not finally dissolved until the entry of a final decree of divorce some time after the expiration of one year from the date of filing of the interlocutory decree, for immigration purposes the marriage entered into by the applicant with Mr. Lew cannot serve as the basis for the proper issuance of a visa under the first preference classification of the quota to a "spouse" of the marriage absent the existence of a bona fide husband and wife relationship. Such relationship is nonexistent in the instant case. While a bona fide resumption of the husband and wife relationship in the future and prior to the entry of the final decree would again entitle this applicant to derive first preference classification, that eventuality is not dispositive of the issue presently before this Service for consideration.

**ORDER:** It is ordered that the motion for reconsideration be granted.

*It is further ordered* that upon reconsideration no change be made in the decision of the District Director dated February 2, 1965 denying the application for status as a permanent resident.