MATTER OF McKEE

In Visa Petition Proceedings

A-22354345

*Decided by Board March 11, 1980*

(1) A fraudulent or sham marriage that is entered into for the primary purpose of circumventing the immigration laws does not enable an alien spouse to obtain immigration benefits.

(2) Where the parties enter into a valid marriage, and there is nothing to show that they have since obtained a legal separation or dissolution of that marriage, a visa petition filed on behalf of the alien spouse should not be denied solely because the parties are not residing together.

(3) Although the separation of spouses in and of itself is not a valid basis for denial of a visa petition based upon a determination that the marriage is not viable, a separation is a relevant factor in determining the parties' intent at the time of their marriage, *i.e.,* whether the marriage is a sham.

ON BEHALF OF PETITIONER: David M. Doering, Esquire
1256 Clarkson Street
Denver, Colorado 80218

BY: Milhollan, Chairman; Maniatis, Appleman, Maguire, and Farb, Board Members

The petitioner has appealed from the decision of a District Director, dated December 12, 1978, denying the visa petition filed on behalf of the beneficiary as his spouse under section 201(b) of the Immigration and Nationality Act, 8 U.S.C. 1151(b). The record will be remanded.

The petitioner, a 24-year-old United States citizen, married the beneficiary, a 25-year-old native and citizen of Australia, on August 12, 1977 in Pensacola, Florida. On October 12, 1977, the petitioner filed a visa petition on the beneficiary's behalf, seeking to accord her immediate relative status. In his decision, the District Director found that the parties had separated, and, on that basis, he denied the petition. On appeal, the petitioner has raised several arguments in support of his claim that the District Director erred in considering the unsworn statement of the beneficiary that she and the petitioner had separated, in not affording the petitioner an opportunity to rebut this adverse evidence, and in considering the separation of the parties as a

valid basis upon which to deny the petition.

In connection with the petitioner's last argument, we requested the position of the Immigration and Naturalization Service on April 24, 1979. In a memorandum dated June 22, 1979, the Service indicated their agreement with the rationale of the recent decision of *Chan v. Bell*, 464 F.Supp. 125 (D. D.C. 1978), thereby accepting the court's ruling that, where the parties to a marriage were living apart, but there was no contention that the marriage was a sham at its inception in that it had been entered into for the purpose of evading the immigration laws, the Service could not deny the visa petition solely because the parties were no longer living together.

In the past, this Board has held that a visa petition would only be approved where the petitioner established that he and the beneficiary had entered into a bona fide marriage which is presently viable and ongoing. *See Matter of Mintah*, 15 I&N Dec. 540 (BIA 1975). We found support for our position in the Congressional objective of preservation of the family unit through the immigration laws. *See generally Matter of Lew*, 11 I&N Dec. 148 (D.D. 1965). A marriage that is entered into for the primary purpose of circumventing the immigration laws, referred to as a fraudulent or sham marriage, has not been recognized as enabling an alien spouse to obtain immigration benefits. *See Lutwak v. United States*, 344 U.S. 604 (1953); *McLat v. Longo*, 412 F.Supp. 1021 (D. V.I. 1976); *Matter of M—*, 8 I&N Dec. 118 (BIA 1958); *see generally Johl v. United States*, 370 F.2d 174 (9 Cir. 1967). However, we have always recognized that a fraudulent or sham marriage is intrinsically different from a nonviable or nonsubsisting one, *see, e.g., Matter of Rahmati*, 16 I&N Dec. 538 (BIA 1978), although we have denied visa petition approval in both instances.

*Chan v. Bell, supra*, involved an appeal from the denial of a visa petition filed by a United States citizen petitioner on behalf of her husband. The parties in that case had known each other for several years prior to their marriage on January 10, 1975. The couple lived together for several months subsequent to their marriage during which time they jointly purchased property. In July 1975, they separated, but continued an amicable relationship and their joint property ownership. In May 1976, the petitioner informed the District Director by letter that she and her husband had separated. Based upon this separation, the District Director denied the visa petition on June 14, 1976. A subsequent appeal to the Board was denied on November 9, 1977.

In its decision, the *Chan* court characterized the Attorney General's role in the adjudication of immediate relative visa petitions under section 201(b) of the Act as "limited: he is required to approve any true petition of a spouse of an American citizen in order that such spouse

may secure immediate relative status." *Id.* at 127. *Compare Menezes* v.
*INS,* 601 F.2d 1028 (9 Cir. 1979). *See also Dabaghian* v. *Civiletti,* 607
F.2d 868 (9 Cir. 1979). The court noted that, at the time the visa petition
was filed, the parties were lawfully married and that no divorce or
legal separation had taken place, nor had any proceedings for divorce
or legal separation been instituted. The court then went on to state its
reasons for rejection of our decision affirming the District Director's
denial of the visa petition based upon our characterization of the
Chans' marriage as "nonviable."

The *Chan* court addressed the distinction between a sham and a
nonviable marriage, recognizing that the Service is not precluded
"from refusing to recognize fraudulent marriages." *Id.* at n. 8. How-
ever, the court found no support in the statute or regulations for our
refusal to approve a visa petition based on a finding that the parties to
a valid marriage did not have a subsisting relationship. We find the
reasoning of the court's decision in this regard persuasive.

In the present case, the District Director denied the visa petition
based upon his determination that—

> [I]t must be established that a viable marriage exists both at the time of filing of the
> petition and at this time. On October 16, 1978, the beneficiary of the petition related to
> an officer of this Service that you and she were no longer residing together as man and
> wife.

He, therefore, based his denial of the petition on the sole basis that the
parties were not residing together. The record indicates that the
parties entered into a marriage valid under the laws of Florida, the
place of celebration; there is no evidence that they have since obtained
a legal separation or dissolution of that marriage under the laws of any
state. Accordingly, we find that it was error for the District Director to
deny the instant visa petition based solely on the separation of the
parties. To the extent the *Matter of Mintah, supra,* indicates otherwise,
it is hereby modified.

However, it is important to recognize that, although a separation in
and of itself is no longer a valid basis for denial of a visa petition based
upon a determination that the marriage is not viable, it is a relevant
factor in determining the parties' intent at the time of their marriage,
*i.e.,* whether the marriage is a sham. *See Bark* v. *INS,* 511 F.2d 1200 (9
Cir. 1975). In *Bark,* the court held that a marriage was a "sham" if "the
bride and groom did not intend to establish a life together at the time
they were married." 511 F.2d at 1201. The court there found that the
duration of a separation is relevant, but not dispositive, on the issue of
intent, stating that—

> Conduct of the parties after marriage is relevant only to the extent that it bears upon
> their subjective state of mind at the time they were married. Evidence that the parties
> separated after their wedding is relevant in ascertaining whether they intended to

334

> establish a life together when they exchanged marriage vows. But evidence of separa-
> tion, standing alone, cannot support a finding that a marriage was not bona fide when
> it was entered. . . . Of course, the time and extent of separation, combined with other
> facts and circumstances, can and have adequately supported the conclusion that a
> marriage was not bona fide.

511 F.2d at 1202 (citations omitted). *See also Matter of Phillis*, 15 I&N Dec. 385 (BIA 1975).

In the present case, no determination has been made regarding the parties' intent at the time of their marriage. Additionally, there is no evidence concerning the present status of the petitioner's marriage, *i.e.*, whether the parties are legally separated or have dissolved their marriage, nor has there been compliance with the regulation requiring the Service to give the petitioner an opportunity to rebut any adverse evidence before rendering a decision. *See* 8 C.F.R. 103.2(b)(2); *Matter of Holmes*, 14 I&N Dec. 647 (BIA 1974). Accordingly, we will remand the record for further consideration and the entry of a new decision. *See generally Matter of To*, 14 I&N Dec. 679 (BIA 1974). The petitioner should be given an opportunity on remand to submit any additional evidence he may have in support of the petition.

ORDER: The record is remanded.