**TOP SET INTERNATIONAL, INC., a California corporation; Chin–Wen Yu, Plaintiffs—Appellants,**

v.

**Donald W. NEUFELD, Director of the California Service Center of the United States Citizenship and Immigration Services Robert P. Weimann, Director, Administrative Appeals Office U.S. Citizenship and Immigration Service; Michael Chertoff Secretary of the Department of Homeland Security, Defendants—Appellees.**

No. 07–56314.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Dec. 9, 2008.

Filed March 11, 2009.

Michael Friedberg, Esquire, Law Offices of Saldin & Friedberg, Los Angeles, CA, for Plaintiffs–Appellants.

Top Set International, Inc., A California Corporation, Los Angeles, CA, pro se.

Chin Wen Yu, pro se.

Joshua E. Braunstein, Esquire, J. Max Weintraub, Trial, DOJ—U.S. Department of Justice, Washington, DC, Keith Miles Staub, Assistant U.S., USLA—Office of the U.S. Attorney, Los Angeles, CA, for Defendants–Appellees.

Before: PREGERSON, D.W. NELSON and THOMPSON, Circuit Judges.

## MEMORANDUM *

Top Set International ("Top Set") and Chin–Wen Yu ("Yu") (collectively "appellants") appeal the district court's grant of summary judgment in favor of the government. Appellants seek review of the Administrative Appeals Office's ("AAO") decision revoking Yu's employment-based visa petition. We have jurisdiction pursuant to 28 U.S.C. § 1291. Because the evidence does not compel the conclusion that Yu was engaged in primarily executive or managerial duties, we affirm the judgment of the district court.

We review the district court's grant of summary judgment de novo. *Family Inc. v. U.S. Citizenship & Immigration Servs.*, 469 F.3d 1313, 1315 (9th Cir.2006). "However, the underlying agency action may be set aside only if 'arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law.'" *Id.* (quoting 5 U.S.C. § 706(2)(A)). An agency's factual findings are reviewed for substantial evidence and will not be overturned "unless the evidence presented would *compel* a reasonable finder of fact to reach a contrary result." *Id.* (internal quotation marks omitted). In order to revoke a previously approved visa petition, the government must have "good and sufficient cause," 8 U.S.C. § 1155, which means only that the government "retains at least the burden of producing substantial evidence supporting its determination," *Tongatapu Woodcraft Hawaii, Ltd. v. Feldman*, 736 F.2d 1305, 1309 (9th Cir.1984). Thus, despite appellants' contention, "our analysis is not affected by the fact that this case arises out of a visa petition revocation as opposed to the initial denial of a visa petition." *Love Korean Church v. Chertoff*, 549 F.3d 749, 754 n. 3 (9th Cir.2008).

"A United States employer may file a petition on Form I–140 for classification of an alien . . . as a multinational executive or manager." 8 C.F.R. § 204.5(j)(1). An alien qualifies as a multinational executive or manager if, "in the 3 years preceding the time of the alien's application . . ., [the alien] has been employed for at least 1 year by a firm or corporation . . . or subsidiary thereof and the alien seeks to enter the United States in order to continue to render services to the same employer . . . in a capacity that is managerial or executive." 8 U.S.C. § 1153(b)(1)(C).

The term 'managerial capacity' means an assignment within an organization in which the employee primarily—

(i) manages the organization, or a department, subdivision, function, or component of the organization;

(ii) supervises and controls the work of other supervisory, professional, or managerial employees, or manages an essential function within the organization, or a department or subdivision of the organization;

(iii) if another employee or other employees are directly supervised, has the authority to hire and fire or recommend those as well as other personnel actions (such as promotion and leave authorization) or, if no other employee is directly supervised, functions at a senior level within the organizational hierarchy or with respect to the function managed; and

(iv) exercises discretion over the day-to-day operations of the activity or function for which the employee has authority.

*Id.* § 1101(a)(44)(A). The statute further provides that a "first-line supervisor is not considered to be acting in a managerial

---

* This disposition is not appropriate for publication and is not precedent except as provided by 9th Cir. R. 36–3.

capacity merely by virtue of the supervisor's supervisory duties unless the employees supervised are professional." *Id.*

The term 'executive capacity' means an assignment within an organization in which the employee primarily—

(i) directs the management of the organization or a major component or function of the organization;

(ii) establishes the goals and policies of the organization, component, or function;

(iii) exercises wide latitude in discretionary decision-making; and

(iv) receives only general supervision or direction from higher level executives, the board of directors, or stockholders of the organization.

*Id.* § 1101(a)(44)(B).

■ Appellants argue the AAO's decision was arbitrary and capricious for three reasons. First, appellants claim the AAO's reasoning was inconsistent throughout the proceedings. This argument is unpersuasive. Though the basis for the agency's various rulings evolved as additional evidence was submitted, the agency consistently maintained that there was insufficient evidence that Yu would be employed in a primarily executive or managerial capacity.

■ Second, appellants argue the AAO improperly based its decision on Top Set's small size. Appellants concede, however, that we are reviewing only the AAO's final decision, which did not mention Top Set's small size as a factor in its decision. Even if the AAO had considered Top Set's size, this would not have constituted error: though "an organization's small size, standing alone, cannot support a finding that its employee is not acting in a managerial capacity, ... size is nevertheless a relevant factor in assessing whether an organization's operations are substantial enough to support a manager." *Brazil Quality*

*Stones, Inc. v. Chertoff,* 531 F.3d 1063, 1070 (9th Cir.2008) (internal marks and citation omitted); *see also Family Inc.,* 469 F.3d at 1316 ("USCIS may properly consider an organization's small size as one factor in assessing whether its operations are substantial enough to support a manager.").

■ Appellants' final contention is that the AAO ignored or disregarded evidence that Yu was employed as an executive or manager. The record does not support this contention. There is no indication the AAO ignored the evidence before it. On the contrary, the AAO quoted in full appellants' description of Yu's duties, then compared that description to the statutory requirements and found that it was, "for the most part, ... a generic description paraphrasing elements of the definitions of managerial or executive capacity." Though some overlap in language between the statute and the job descriptions is probably unavoidable, it was not unreasonable for the AAO to require more than mere recitation before finding that an employee qualifies as a manager or executive. Otherwise, every petition would succeed simply by regurgitating the statutory requirements.

More fundamentally, even if we accept that Yu performed *some* managerial or executive duties, appellants have failed to show that Yu was *primarily* engaged in such activities. In *Brazil Quality Stones,* this court reviewed the AAO's decision that the president and chief executive officer of Brazil Quality Stones ("BQS") was not "primarily employed in a managerial or executive capacity." 531 F.3d at 1067. His duties included: "(1) supervising and managing BQS's office and business affairs; (2) overseeing capital investment opportunities; (3) developing plans to further channels of distribution; (4) hiring and firing all employees and supervising

managers; (5) overseeing domestic and international sales; and (6) managing outsourced relationships with BQS's accounting firm and warehouse." *Id.* (internal quotation marks omitted). The AAO, however, "determined that BQS has not yet reached the level of organizational sophistication in which ... [petitioner] could devote his primary attention to managerial duties as opposed to operational ones, even though he held a position at the head of BQS's corporate structure." *Id.* at 1070. The AAO "concluded that ... [the president's] direct involvement in the corporation's daily operations was necessary for its success and that such fact precluded ... [him] from qualifying as a managerial employee." *Id.* This court held that, though "the record contains evidence that ... [the president] performed managerial tasks, it does not compel the conclusion that such tasks comprised his primary responsibilities at BQS." *Id.* at 1071.

The same can be said about Top Set: its current level of "organizational sophistication" necessitates that Yu, despite her "position at the head of ... [Top Set's] corporate structure," be involved in "operational" duties, such as marketing, designing a computer system, and planning inhouse training, which "precluded ... [her] from qualifying as a managerial [or executive] employee." *See id.* at 1070. Because the evidence does not compel the conclusion that Yu was engaged in primarily executive or managerial duties, the agency's decision was not arbitrary, capricious, an abuse of discretion, or contrary to law. We therefore uphold the decision of the district court.

AFFIRMED.

PREGERSON, J., dissenting:

I dissent. Yu entered the country in 2000 and lives here with her husband and two children. I would hold that the AAO's determination was arbitrary and capricious because it failed to adequately consider the evidence Yu presented regarding her qualifications as an executive or manager. While Top Set did recite the statutory and regulatory requirements for Yu's position, it went further to specifically describe some of Yu's many job duties. These duties include planning and designing a computer system, planning and designing an in-house employee training program concerning Top Set's products and services, and developing a plan to expand Top Set's marketing capabilities. These are all duties consistent with an executive or managerial position. Accordingly, the record requires me to conclude that Yu was performing as an executive or manager of Top Set.